POOR QUALITY ORIGINAL

36

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

POOR QUALITY ORIGINAL

ED D. FOSTER.,
Petitioner,

-v-

DUNCAN MACLAREN.,
Respondent.

FILED
AUG - 2 2017
CLERK'S OFFICE
U.S. DISTRICT COURT

Case No. 2:15-cv-12265-LJM
Hon. LAURIE J. MICHAELSON.,
U.S. District Court Judge.

HON. MICHAEL J. HLUCHANIUK.,
U.S. District Court Magistrate.

MOTION TO HOLD PETITION IN ABEYANCE

NOW COMES Ed D. Foster, ("Petitioner" hereinafter), acting In Pro Per, and if it so pleases this Honorable Court, appears within pursuant to the highly applicable standards set forth within Fed. R. App. Proc., rule 8(a)(2), and hereby moves the Court to grant the foregoing Motion to Hold his Petition for A Writ of Habeas Corpus within Abeyance, and states that it is not with any intentional cause of undue prejudice, or undue delay to the non-moving party, nor is it this Petitioner's intent to file in bad faith or improper motive, the proceeding motion, and thus, he hereby deposes as follows:

1. Petitioner-Appellant was convicted of First Degree Murder, contrary to MCLA § 750.316, by jury, and was sentenced by the Honorable Richard Lamb to a term of Life without the possibility of parole, within the Van Buren County Circuit Court;

2. Through the State Appellate Defenders Office ("SADO" hereinafter), he was appointed appellate counsel, i.e. Michael L. Mittlestat, P-68478, in whom filed a(n) Application for Leave to Appeal, within the Michigan Court of Appeals. At which point, Petitioner submitted to be filed a Standard 4 Brief;

3. However, appointed appellate counsel failed to file said Standard 4 Brief on the behalf of Your humble Petitioner, due to alleged "clerical errors" with SADO Administrative Staff, which was beyond the immediate control of Petitioner Foster. On the date of December 3rd., 2013 the Michigan Supreme Court granted Appellate Counsel's Motion for Expansion of the Grounds for Review, as well as, acceptance of the In Pro Per Supplemental Application for Leave to Appeal, to include the Standard 4 Brief, which had been precluded from the Michigan Court of Appeals review. (See Exhibit-A, Attached);

4. On the date of June 10th., 2014, the Michigan Supreme Court denied Petitioner's Application for Leave to Appeal;

5. Be that as it may, Petitioner was not afforded a fair and impartial review of the claims raised within his Standard 4 Brief by the Michigan Court of Appeals(See Exhibit-B, Attached). A(n) issue, in which, could present a potential procedural bar under Federal Habeas review, as the Petitioner has not actively exhausted all available State Court remedies pertaining to the claims raised within the aforementioned supplemental pleadings, where the Michigan Court of Appeals was deprived of the opportunity to adjudicate said claims based upon the merits;

EXHAUSTION OF STATE COURT REMEDIES

6. Accordingly, the doctrine of exhaustion of State remedies requires state prisoners to "fairly present" their claims as federal

Constitutional issues in the State Courts before raising those claims in a federal habeas corpus petition. (See e.g. O'Sullivan-v-Boerckel, 526 U.S. 838, 842; 144 L.Ed.2d 1; 119 S.Ct. 1728(1999); McMeans-v-Brigano, 228 F.3d 674, 681(6th. Cir. 2000); Rust-v-Zent, 17 F.3d 155, 160(6th. Cir. 1994); 28 U.S.C. § 2254(b)(1)(A), (C). The exhaustion requirement is satisfied if a prisoner invokes one complete round of the State's established appellate review process, including a Petition for discretionary review to a State Supreme Court. O'Sullivan, supra, @845. A Michigan petitioner must present each ground to both Michigan Appellate Courts. (See e.g. Hohn-v-Bock, 208 F.Supp.2d 796, 800(E.D. Mich. 2002); Hafley-v-Sowders, 902 F.2d 480, 483(6th. Cir. 1990);

7. Within this instant case at bar, Petitioner prepared a proper pleading, in accordance with Administrative Rule-2004-6, Standard 4. The pleading was sent to appointed counsel within ample time for counsel to file with the Michigan Court of Appeals, which had his appeal under review. (See Exhibit-B, Attached);

8. Petitioner, hereby asserts that it was due, part and partial, to the "clerical errors" and "oversight" of SADO Administrative Staff that counsel did not file Petitioner's supplemental pleadings. Counsel admitted as much within his Motion to Expand the Record, within the Michigan Supreme Court(See Exhibit-A, pg. 1-3, paragraphs 7-14). Counsel acknowledged that "Petitioner" is a "lay-person" within the practice of the law, and bears no fault within the alleged "oversight". Under this premise, Petitioner asserts

that "[A]n appellant who is essentially sentenced to death and states a claim of actual innocence, should be afforded every level of review available under law."

9. On the date of October 9th., 2012, the Petitioner even took the steps, thought necessary, to submit his claims directly to the Michigan Court of Appeals himself, however, the Court rejected said submission on the date of October 11th., 2012, as it was not filed properly through appointed appellant counsel.

## CONCLUSIONARY PRAYER FOR RELIEF

10. Petitioner, hereby prays this Honorable Court to grant remand of this matter to the Michigan Court of Appeals, while holding his Petition for a Writ of Habeas Corpus, in which is currently at bar, within abeyance, ordering the Michigan Court of Appeals to render its factual determination of the merits of said claims raised within his Standard 4 Brief. Being that those issues have not been afforded the opportunity of exhaustion.

11. Additionally, there is a claim of actual innocence contained within Petitioner's Standard 4 Brief, in which warrants advancement to the federal court. This procedural bar could potentially make federal habeas corpus review extremely difficult, given the fact that Petitioner must overcome the obstacle of ineffective assistance of appellate counsel, in order

to show cause for an apparent failure to exhaust State-Court remedies, in which is a necessary requirement, in order to obtain habeas relief. (See e.g. Tucker-v-Renico, 317 F.Supp.2d 766(E.D. Mich. 2004).

***RELIEF SOUGHT***

WHEREFORE it is for these reasons, for which, Your humble Petitioner hereby moves this Honorable Court to (1) Hold his pending Petition for a Writ of Habeas Corpus in Abeyance, (2) Remand this matter to the Michigan Court of Appeals, with instruction to adjudicate the claims contained within his Standard 4 Brief, so as to prevent a miscarriage of justice, and promote fair and impartial appellate procedures.

Amicable Relief, thus, sought.

Respectfully submitted,

BY:/s/ ____________ # 226862

MR. ED D. FOSTER., MDOC No. 226862
PETITIONER-In Pro Per.
KINROSS CORRECTIONAL FACILITY
c/o 4533 West Industrial Park Drive
Kincheloe, Michigan 49788

Date: July 28, 2017.

Case 2:15-cv-12265-LJM-SDD ECF No. 13, PageID.5770 Filed 08/02/17 Page 6 of 36

IN THE COURT OF APPEAL FOR THE STATE OF MICHIGAN

Court of Appeals:#301361; Trial Ct.:#10-17033-FC

PEOPLE OF THE STATE OF MICHIGAN,
Plaintiff-Appellee,

-v-

EDWARD FOSTER.,
Defendant-Appellant.

CLERK'S OFFICE
RETURNED
OCT 11 2012
COURT OF APPEALS THIRD DISTRICT LARRY S. ROYSTER CHIEF CLERK
2012 OCT -9 AM 10: 31
RECEIVED

## PROOF OF SERVICE

NOW COMES, EDWARD FOSTER, Defendant-Appellant, appears In Pro Per, and states that he placed in the U.S. Mail Box, one (1) copy of the attached Motion, to the Michigan Court of Appeals Clerk's Office.

Defendant-Appellant has shown that under the penalty of perjury that the foregoing is true and correct to the best of his knowledge, in formation and belief.

## NOTICE OF HEARING

TO THE PROSECUTOR:

Please take notice that on the next date that Motions Hearings are held, the undersigned will move this Honorable Court to grant the attached Motion.

2012 OCT 11 AM 11: 25
RECEIVED

## MOTION OF PRAECIPE

TO THE COURT CLERK:

Defendant-Appellant, hereby states that he has attempted to present the attached pleadings to assigned appellate counsel, in pursuant to the highly applicable standards set forth within Michigan Supreme Court Order 1981-7 §(7), to no apparent avail. Thus, Defendant-Appellant was left with no other resolve but to present the attached pleadings to the Court of Appeals, In Pro Per. Appellant, hereby prays that on the next scheduled calendar date that Motions are heard, that said pleadings be placed on docket for hearing.

RESPECTFULLY,

BY: [signature] #226862

MR. EDWARD FOSTER, #226862
Bellamy Creek Correctional Facility
1727 West Bluewater Highway(4-256-T)
Ionia, Michigan 48846
In Pro Per.

Date: Oct. 4, 2012.

**IN THE COURT OF APPEALS FOR THE STATE OF MICHIGAN**

************************************************************

RECEIVED
2012 OCT 11 AM 11:25
COURT OF APPEALS
GRAND RAPIDS OFFICE

PEOPLE OF THE STATE
OF MICHIGAN,
Plaintiff-Appellee,

-v-

EDWARD FOSTER.,
Defendant-Appellant.

MICHIGAN COURT OF APPEALS
P.O. BOX # 30022
OTTAWA STREET
LANSING, MICHIGAN 48909
***Attn**; CLERK OF THE COURT.

RETURNED
OCT 11 2012
COURT OF APPEALS
THIRD DISTRICT
LARRY S. ROYSTER
CHIEF CLERK

RECEIVED
2012 OCT -9 AM 10:31
COURT OF APPEALS
LANSING OFFICE
LARRY S. ROYSTER
CHIEF CLERK

JOYCE F. TODD, (P-31026)
SPECIAL ASSISTANT ATORNEY GENERAL
DEPARTMENT OF ATTORNEY GENERAL
P.O. Box # 30217
Lansing, Michigan 48909
***Attn**; Criminal Division.

S.Ct. Case No:
C.O.A. Case No.:#301361
Lower Ct. Case No.:#10-17033-FC

*****IN PRO PER MOTION TO AMEND AND/OR SUPPLEMENT APPLICATION FOR LEAVE*****
**TO APPEAL**

**Pursuant to:** Williams-v-Taylor, supra, 529 U.S 362, 390-391; 120 S.Ct. 1495, 1511; 146 L.Ed.2d 389(2000) **holding that;**

"[T]he only means for which relief may be granted is a.) The State Court decision is in 'square conflict' with Supreme Court precedent that is controlling as to law and fact, or b.) If no such controlling decision exist, the State Court resolution of a question of law rest upon an objectively unreasonable deprivation of legal principles from relevant Supreme Court precedents or if its decision rest upon an objectively unreasonable application of established principles to new facts."

RESPECTFULLY,
BY: [signature] # 226862
MR. EDWARD FOSTER., MDOC#
Bellamy Creek Correctional Facility
c/o 1727 West Bluewater Highway(4-256-T)
Ionia, Michigan 48846
In Pro Per. MOTION.

[COVER]

IN THE COURT OF APPEALS FOR THE STATE OF MICHIGAN
**************************************************

Court of Appeals: #301361; Trial Ct.: #10-17?33-FC

PEOPLE OF THE STATE
OF MICHIGAN,
Plaintiff-Appellee,

-v-

EDWARD FOSTER.,
Defendant-Appellant.

RETURNED
OCT 11 2012
COURT OF APPEALS
THIRD DISTRICT
LARRY S. ROYSTER
CHIEF CLERK

RECEIVED
2012 OCT -9 AM 10:31
COURT OF APPEALS
LANSING OFFICE
LARRY S. ROYSTER
CHIEF CLERK

***IN PRO PER MOTION TO AMEND AND/OR SUPPLEMENT APPLICATION FOR LEAVE TO APPEAL***

NOW COMES, EDWARD FOSTER, Defendant-Appellant, acting In Pro Per, and if it so pleases this Honorable Court, appears in pursuant to the highly applicable standards set forth within MCR 7.216(A)(3), in which, Provides that;

§(A) RELIEF OBTAINABLE. "The Court of Appeals may, at any time, in addition to its general powers, in its discretion, and on the terms it deems just:

§(3) permit amendment or additions to the grounds for appeal."
[In Pertinent Part]

WHEREFORE, it is for these, as well as, the foregoing reasons that the above-entitled party, respectfully prays this Honorable Court grant Motion to Amend and/or Supplement Appellant's Application for Leave to Appeal, within its consideration of the following claims:

ARGUMENT I

DEFENDANT-APPELLANT FOSTER WAS DEPRIVED OF HIS FEDERAL AND STATE CIVIL LIBERTIES, WHERE COUNSEL FAILED TO INVESTIGATE CLAIMS MADE BY SEVERAL PROSECUTION WITNESS, REGARDING THEIR BEING SUBJECTED TO COERCIVE POLICE INTERROGATION TACTIC'S, WITHIN THE POLICE'(S) EFFORTS TO RESOLVE AN OBVIOUSLY COLD CASE, RESULTING IN FALSE TESTIMONY WITHIN INVESTIGATIVE SUBPOENA AND TRIAL COURT PROCEEDINGS, REQUIRING DEFENDANT-APPELLANT FOSTER BE AFFORDED A NEW TRIAL.

RECEIVED
2012 OCT 11 AM 11:25

STANDARD OF REVIEW: For ineffective assistance of counsel claim, the "de novo" standard of review applies to the existing record. See, e.g. People-v-Barclay, 208 Mich.App. 670, 672; 528 N.W.2d 842(1995). The Court reviews a claim of ineffective assistance of counsel to determine whether counsel's performance fell below an objective standard of reasonableness and that the representation prejudiced the defendant to the extent that it denied him a fair trial. People-v-Pickens, 446 Mich. 298, 302-303; 521 N.W.2d 797(1994). To demonstrate prejudice, the defendant must s show that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. People-v-Stanaway, 446 Mich.

643, 687-688; 521 N.W.2d 557(1994).

***PRESERVATION OF ISSUE***

Mr. Foster may raise this ineffective assistance of counsel claim for the first time on appeal because it involves a constitutional error that likely affected the outcome of the trial. People-v-Henry, 239 Mich.App. 140, 146; 607 N.W.2d 767(1999). Because the extent of the error is not on record, Appellant has concurrently filed a timely motion to remand pursuant to MCR 7 211(C)(1); MCR 7.216(A)(5); People -v-Ginther, 390 Mich. 436, 443; 212 N.W.2d 922(1973).

***DISCUSSION***

Trial Counsel had opportunity to hear testimony, as well as, review the Investigative Subpoena transcript(s) of several alleged witness(es), in whom, all averred to either being approached and/or solicited by intimidation of State Trooper regarding the alleged charged offense, in which, had occurred a full decade prior to said investigative measures being exacted.

The only problem with this is the conduct of said officer(s) within regards to the investigation The following testimonial statements should have given rise to a highly cognizable claim of '**police coercion**':

***LATONYA DENISE TURMAN***

**Line 22** A. Because, like I say, Trooper kept saying Ed, Ed, Ed, this, this, that. But, like I say, he was there in the circle but I didn't see him do anything. Like I say, I was drunk, too, so--but he might have---(**See** Investigative Subpoena Transcript, page 14, Line 19-22

Defendant-Appellant Foster, hereby asserts that "Under Strickland, "[T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (**See** Strickland-v-Washington, supra, 466 U.S.,@694; 104 S.Ct.,@2068;80 L.Ed.2d 674(1984).

Another 'crucible' element of the claimed improprieties of Investigative Officer(s) is and/or was evident within the circumstances centering around alleged prosecution key witness(**i.e.** ADRIENNE BURNETTE, in whom, during preliminary examination made similiar implications of '**police coercion**'. (**See** Preliminary Examination Transcript, dated March 11, 2010, page 136, Lines 21-24 **Providing**:

IN THE COURT OF APPEALS FOR THE STATE OF MICHIGAN
*****************************************************
Court of Appeals:#301361; Trial Ct.:#10-17033-FC

***ADRIENNE BURNETTE***

Line 21 Q. Well, lets go back and try to recall. Who was the first person to bring up Ed Foster's name in the involvement of this? Was it you or was it somebody from law enforcement?

(Ms Burnette) Line 24 A. Uhm, it was somebody from law enforcement.

Defendant-Appellant Foster, hereby asserts that "[D]efendant must affirmatively demonstrate that counsel's performance was objectively unreasonable and so prejudicial as to deprive him of a fair trial." (See People-v-Pickens, 446 Mich. 298, 338; 521 N.W.2d 797(1994); People-v-Ortiz, 249 Mich.App. 297, 311; 642 N.W.2d 417(2001).

Based on the record, trial counsel had reason to believe that Ms. Burnette had a high propensity for fabricating untruths whenever confronted with facts surrounding her involvement within the charged offense, yet counsel failed to challenge and/or raise such a viable defense strategy of '**police coercive**' conduct. (See Supplemental Incident Report(Adrienne Burnette), dated Tuesday, April 28, 2009, pages 3 of 12, in which, **Implicitly states;**

> "At this time Ofc. Allen asked Adrienne if in fact Ed Foster had made any threats to her. Adrienne then got really quiet and didn't respond. Adrienne was asked again about Ed Foster. **Ofc. Allen explained to Adrienne that he is aware that many people in this case have been threatened by Ed Foster.**"
>
> [In Pertinent Part](**Emphasis Added**)

A(n) issue, in which, substantiated Ms. Burnette's claim of law enforcement mentioning Ed Foster's alleged involvement in the death of Ms. Boothby. Ms. Burnette goes on to state:

Line 13 Q. Not only did you not bring up his name, not only did you not agree with them, you didn't say anything about Ed Foster?

(Ms Burnette) Line 16 A. Correct.

Line 17 Q. It was presented to you as a way out and you did take it, correct?

(Ms. Burnette) Line 19 A. Correct. (See Jury Trial Transc., Vol. X, dated October 4, 2010, pages 239-240; **See also** People-v-Poole, supra, 444 Mich. 151, 161; 506 N.W.2d 505(1993), wherein, the Court **held that;**

"[T]he presence of the following factors would favor a

> finding of inadmissibility: whether the statement was (1) Made to law enforcement officers or at the prompting or inquiry of the listener, (2) Minimizes the role or responsibility of the defendant or shifts blame to the accomplice; (3) Was made to avenge the defendant or curry favor, and (4) Whether the defendant had motive to lie or distort the truth." **Id.**,@ 161.

Within regards to Ms. Burnette all of the above-aforementioned factors are and/or were present, yet counsel failed to advocating these viable defensive factors. (**See** People-v-Carbin, 463 Mich. 590, 599-600; 623 N.W.2d 884(2001); People -v-Harmon, 248 Mich.App. 522, 531; 640 N.W.2d 314(2001), wherein, the Court **held that**;

> "Defendant has the burden of establishing ineffective assistance of counsel claim, and must demonstrate (1) That the attorney's performance was objectively unreasonable in light of prevailing professional norms, and (2) That, but for the attorney's error or errors, a different outcome reasonably would have resulted."

Defendant-Appellant Foster, hereby states that counsel had reason to believe that this claim of '**police coercion**' was an on-going theme within the investigative phase of the adversarial procedural process, for another witness offered similiar testimony:

*****SHARON MARTINEZ*****

**Line 8** Q. Thank you very much. Ms. Martinez, March of 2009, did you happen to speak to a Michigan State Police Trooper by the Kyle Gorham about the death of Deborah Boothby, which was in 1999?

(Ms. Martinez)**Lines 9** A. Yes, I did.(**See** Prelimin. Examin. Transc., dated March 11, 2010, page 177, Lines 8-10.

This Honorable Court must understand and/or draw an inference that this was no chance encounter between Ms. Martinez and Trooper Gorham. (**See** Prelimin. Examin. Transc., dated March 11, 2010, page 211, Lines 1-6, wherein, the witness Sharon Martinez avers to the following fact:

**Line 1** Q. And that was many years ago, right?

(Ms. Martinez)**Line 2** A. No, I got interviewed just last year.

**IN THE COURT OF APPEALS FOR THE STATE OF MICHIGAN**

Court of Appeals:#301361; Trial Ct.:#10-17033-FC

Line 3 Q. But you didn't give a statement back in '99?

Line 4 A. Ninety-nine.

Line 5 Q. Yep, No statement then?

Line 6 A. No.

Defendant-Appellant Foster, hereby asserts that counsel was deemed ineffective within similiar circumstance. (See Blackburn-v-Foltz, 828 F.2d 1177, 1180( 6Th. Cir. 1987); See also ABA Standards for Criminal Justice 4.4.1(a) Providing:

> "Defense counsel should conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction."

Trial Counsel had opportunity to hear consistent testimony regarding 'police coercive' conduct, yet failed to investigate the validity within said witness(es) claims. (See Powell-v-Alabama, supra, 287 U.S.,@68-69; 53 S.Ct.,@63-64, wherein, the Court held that;

> "[C]ounsel has a duty to bring such skill and knowledge to bear as will render the trial a relieable adversarial testing process." (See also Michigan Rules of Professional Conduct, rule

1.3 entitled "Diligence" Providing:

> "A lawyer shall act with reasonable diligence and promptness in representing a client."

Several witness(es) testified that they observed Defendant-Appellant Foster leaving the parking lot while the decedent Ms Boothby was still alive, and walking. Thus, the proof was within the puddling within this regard, for yet another witness offered similiar testimony of 'police coercion':

***TRACY DEANNA HUGHES***

Line 9 Q.,I'm going to ask you specifically, in May of 2009, did you happen to be in a vehicle that was stopped by Trooper and ultimately you gave a statement to him, that being Trooper Gorham?

Line 12 A. Yes. (See Prelim. Examin. Transc., dated March 11, 2010, pg. 218 , Lines 9-12.

At this point, the jury was surely wondering as to the purpose of this alleged traffic stop that resulted in this witness giving a statement regarding a(n) unrelated homicide investigation, and counsel had a duty to resolve theseuriousity within the recess of the juries minds. (See Martin-v-Rose, supra, 744 F.2d 1245,1250(6Th Cir. 1984)(citing United States-v-Cronic, 466 U.S. 648, 656; 104 S Ct. 2039, 2045; 80 L.Ed.

657(1984)[Counsel failed to subject the prosecution's case to "the crucible of meaningful advesarial testing"---the essence of the right to effective assistance of counsel.].

Each of these prosecution witness(es) had one common thread which binds (e.g. The omni-present 'threat' of being charged with perjury after being coerced into offering testimony within Investigative Subpoena proceedings. None of the witness(es), in whom, did not cooperate with the police were asked about Ed Foster, during prosecution's cross or direct examination:

**Line 19** A. I was--I was--I had asked the question and then it came out, they was like well, uhm, Ed Foster the one that had the bat, and I'm like, 'That's who that was?' and that how I found out about it.

Counsel failed to conduct a reasonable investigation via cross-examination, so as to determine as to 'who' this witness was referring to, regarding the implication of Ed Foster. (**See** Strickland-v-Washington, supra, 466 U S. 668; 104 S.Ct. 2052; 80 L.Ed.2d 674(1984).

This Honorable Court has had opportunity to observe the coercive affect that these police interrogations impose. (**See** People-v-Fike, supra, 228 Mich App 178(1998), wherein, Justice P.J. Fitzgerald, within his concurrence, urged the legaislative body to adopt such a rule of audio/video taping interrogations, so as to combat coercive police tactic's.

A(n) issue, in which, brings Defendant-Appellant Foster to his secondary claim, and request for addition of said grounds on appeal:

*****ARGUMENT II*****

**DEFENDANT-APPELLANT FOSTER WAS DEPRIVED OF HIS FEDERAL AND STATE CIVIL LIBERTIES, WHERE THE PROSECUTION DEPRIVED HIM OF A 'FAIR AND IMPARTIAL' TRIAL, WITHIN ITS (1) PRESENTATION OF 'CONJECTURE CAMOUFLAGED AS EVIDENCE", IN WHICH, (2) THE PROSECUTION HAD REASON TO BELIEVE THRIVED FROM UNRELIABLE SOURCES, IN WHOM, (3) SUFFERED COERCIVE POLICE INTERROGATIVE TACTIC'S, WHEREIN, WITNESS(ES) WERE FORCED INTO POSITION OF COMMITTING PERJURY, REQUIRING REVERSAL OF THE CONVICTION AND SUBSEQUENT SENTENCE OF DEFENDANT-APPELLANT.**

**STANDARD OF REVIEW**: This claim of false and perjured testimony is a constitutional claim. Constitutional issues are reviewed de novo. (**See** People-v-McRunels, supra, 237 Mich.App. 168, 171 (1999).

*****DISCUSSION*****

IN THE COURT OF APPEALS FOR THE STATE OF MICHIGAN
***************************************************************

Court of Appeals:#301361; Trial Ct.:#10-17033-FC

***ADRIENNE BURNETTE

Line 13 Q. Not only did you not bring up his name, not only did you not agree with them, you didn't say anything about Ed Foster?

Line 16 A. Correct.

Line 17 Q. It was presented to you as a way out and you did take it, correct?

Line 19 A. Correct. (See Jury Trial Transc., Vol. X, dated October 4, 2010, pages 239-240.

Defendant-Appellant Foster is sure that the prosecution was well aware of the factors set forth within Poole, wherein, the Michigan Supreme Court implied that the following factors would favor a finding of inadmissibility:

> "(1) Was made to law enforcement officers or at the prompting or inquiry of the listener, and (2) Minimizes the role or responsibility of the defendant or shifts the blame to the accomplice, (3) Was made to avenge the defendant or curry favor, and (4) Whether the defendant had motive to lie or distort the truth."

(See People-v-Poole, supra, 444 Mich. 151, 161; 506 N.W.2d 505(1993).

It is well within contingency that the prosecution knew of these factors prior to its calling Ms. Burnette as a witness to a murder, in which, she had openly admitted she had committed. (See Jury Trial Transc., Vol. X, dated October 4, 2010, page 235, Lines 21-24 Providing:

Lines 21-23 Q. Ms. Burnette, just to get it out of the way up front, you were driving a vehicle that drove over Deborah Boothby, is that right?

Line 24 A. Correct.

Prior to Ms. Burnette's testimony, there was the testimony of Ms. LaTonya Turman, in whom, averred to the following:

***LATONYA TURMAN***

Line 4 Q. And that interview was with a trooper from the Michigan State Police?

Line 6 A. Right.

Line 7 Q. Trooper Gorham?

Line 8 A. Yes.

Line 9 Q. What was the general tone of that interview? Was it a pleasant interview?

Line 11 A. It was a three-hour interview. (See Jury Trial Transc., dated September 30, 2010, Lines 4-11.

This witness goes on to testify that she was initimidated by none other than Trooper Gorham:

**Line 6** Q. All right. Well, let's talk about that.

Specifically, do you remember telling Mr. Pheney that some of the things that you put down were not truthful because Trooper Gorham was intimideing you for three hours and so you just wrote what you remembered and for half of it you don't even remember. Do you remember saying that to Mr. Pheney?

**Line 13** A. Yes. (**See** Jury Trial Transc., Vol. VIII, dated September 30, 2010, page 128, Lines 6-13.

Then, there was this testimonial omission by this alleged witness:

**Line 8** Q. And you told Mr. Pheney that Trooper Gorham kept saying Ed, Ed, Ed. Ed. Ed was there. And so you finally said, yeah?

**Line 11** A. That is what I said, yeah.

**Line 12** Q. And you were telling the truth during that interview, right?

**Line 14** A. Yeah.

**Line 15** Q. Okay.

and so, Ed Foster's name was fed to you by law enforcement, is that right?

**Line 18** A. Right, but I did--and Ed was there, though. (**See** Jury Trial Tran script, Vol. VIII, dated September 30, 2010, page 129, Lines 8-18.

The United States Supremem Court has condemned convictions based on false evidence. (**See** Mesarosh-v-United States, supra, 352 U.S. 1, 9; 77 S.Ct. 1, 5; 1 L.Ed. 2d 1(1956), wherein, the Court **held that;**

> "[T]he dignity of the United States government will not permit the conviction of any person on tainted testi- mony."

***PROSECUTORIAL MISCONDUCT/ UNETHICAL CONDUCT CLAIM/SUBTLE THREATS***

The prosecution, within its case against Defendant-Appellant Foster, engaged in conduct that was highly adverse to the maintenance of justice, within its utilizing subtle 'threats', however veiled, to compel continued cooperation from its witness(es), in whom, had obviously been intimidated into giving false testimony:

**Line 8** Q. Advised of the penalties of perjury?

**Line 9** A. Right. (**See** Jury Trial Transc., Vol. VIII, dated September 30, 2010 , pages 116, Line 8-9.

## IN THE COURT OF APPEALS FOR THE STATE OF MICHIGAN

*************************************************

Court of Appeals:#301361; Trial Ct.:#10-17033-FC

Defendant-Appellant Foster, hereby asserts that this was a continuing theme of the prosecution, within specific regards to witness(es), in whom, had knowingly offered false testimony within Investigative Subpoena proceedings, after suffering coercive police tactic's. (See Michigan Rules of Professional Conduct, rule 8.4(c).

Futhermore relevant of this claim of '**police coercion**' is the testimony of:

***ZENAIDA AVEDA RIVERA***

Line 1 Q. Thank you.

Now, your contact with the police, and I'm going to direct your attention, I think that was October 15Th., of 2007?

Line 5 A. Sure.

Line 6 Q. I'm sure you don't know exact day, but does that sound about when this happen?

Line 8 A. Yeah, it was about two years.

Line 9 Q. And this was a rather long procedure where they chatted with you for hours?

Line 11 A. It was seemed like awhile and then they drove me to the club , and yeah it was hours. (See Jury Trial Transc., Vol. XIV, dated October 8, 2010, page 40, Lines 1-11.

Ms. Rivera's testimony collaborates other female witness(es) testimony of the coercive atmosphere imposed by Michigan State Police. An issue, in which, the prosecution woefully attempted to conceal from the jury's consideration. (See **Michigan Rules of Professional Conduct, rule 8.4(b).**

Then, there was the testimony of a witness that the prosecution utilized tax-paying dollars to fly back from Louisiana:

***DANYELA JONES***

Line 4 Q. Okay

I don't mean to pin you down, but do you remember approximately when you would have moved to Louisiana?

Line 8 A. Yes, sir, I do.

Line 9 Q. What month was that?

Line 10 A. August of '07.

**Line 11** Q. August of '07?

So, in any event without, I don't want to argue about dates, but I'm looking at report and you are not, so that is okay.

I just want to clarify though these two ladies came to Louisiana to see you in and stayed for two days that you know of, at least two days that you had contact with them?

**Line 19** A. Yes. (**See** Jury Trial Transc., Vol. XIV, dated October 8, 2010, page 64, Lines 4-19.

Defendant-Appellant Foster, now moves to present the fruits of this rather **expensive** road trip of investigative officer(s):

**Line 18** A. Yes.

Well, basically we were driving down Blue State Highway, and we saw a lady walking down the street and she was staggering so we thought she appeared to be drunk. So, we came up with a bright idea that we going to clip her. And so we turned around and by the time we pulled around and she had fell to the ground. And she kind of felt guilty then, (**See** Jury Trial Transc., Vol. XIV, dated October 8, 2010, page 51, Lines 18-25.

(Page 52)--Continuance---> **Line 1** and we felt that we was going to do something to her and then well, we felt we should do the right thing and we went to get help. So, we walked up to the club or ran up to the club and got Sam Bam. Well, actually before then, we figured we should move her out of the road. But no one actually wanted to touch her.

**Line 7** Q. So you actually stopped your van?

**Line 8** A. Yes.

**Line 11** Q. And looked at the lady?

**Line 12** A. Yes. (**See** Jury Trial Transc., Vol. XIV, dated October 8, 2010, page 52, Lines 1-12.

This witness's testimony is contrery to the Medical Examiners report regarding the actual cause of death of Ms. Boothby, and gives rise to the innocence of Defendant-Appellant Foster. (**See** Sullivan-v-Louisiana, supra, 508 U.S., @275-279; 113 S.Ct.,@2080-2881, **wherein**, the Court **held that**;

> "The prosecution bears the burden of proving all elements of the offense charged."

Defendant-Appellant Foster, hereby asserts that it would

have been virtually impossible for Ms. Boothby to be walking down the highway, had she suffered the following injuries, as averred to by the Medical Examiner:

***MEDICAL EXAMINER***

Line 5 A. Yes. There was a fracture of the pubic bone in her right side of the pelvis and this was also associated with soft-tissue hemorrhage from the fractured bone. (See Prelimin. Examin. Transc., Vol. I, dated March 11, 2010, page 169, Line 5.

Defendant-Appellant Foster, hereby asserts that such a fracture would have undoubtedly precluded Ms. Boothby from being able to walk. Then, prior to said Medical examiner and/or colleague amending its findings, so as to substantiate the prosecution's theory of events, offered testimony regarding potentially fatal injuries being suffered by Ms. Boothby:

Line 15 A. Yes. The left clavicle that is the coller-bone was fractured in its mid-portion and was depressed and obviously deformed.

The internal examination continued with the opening of the chest cavities and this revealed an accumulation or collection of 350 ml. of blood in the right pleural space. And 300 ml. of blood in the left pleural space.

Line 21 Q. And what is the significance of that , Doctor?

Line 22 A. The significance is that that is a very significant amount of blood which was lost from her circulatory system into chest cavities.

Line 24 Q. That's internal bleeding then?

Line 25 A. Yes. (See Prelim. Examin. Transc., Vol. I, dated March 11, 2010, page 167, Lines 15-25.

The Medical Examiner's testimony collaborates several witness(es) testimony regarding the innocence of Defendant-Appellant Foster, well that is prior to the coercive police influence resulted within the Medical Examiner's Office amending its findings, so as to support the prosecution's allegations. One such witness, in whom, offered exonerating testimony was:

***SHARON MARTINEZ***

Line 5 Q. And Mr Foster had nothing to do with that, did he?

Line 6 A. I didn't see his face--I don't recall seeing his face.

Line 8 Q. And specifically you do not recall him picking up Ms. Boothby and carrying Ms. Boothby?

**Line 11** Q. It was other people that did that?

**Line 12** A. Yes (**See** Jury Trial Transc., Vol. XI, dated October 5, 2010, page 163, Lines 5-12.

Then, there was this omission from this witness:

**Line 13** Q. And you never saw Mr. Foster have any physical contact with Ms. Boothby at all?

**Line 15** A. No, I didn't see him, no. (**See** Jury Trial Transc., Vol. XI, dated October 5, 2010, page 163, Lines 13-15.

This Honorable Court must recognize one common thread that binds within regards to the prosecution witness(es) testimony(e.g. After suffering hours of coercive police interrogative tactic's, wherein, they were forced to implicate Defendant-Appellant Foster, they were issued Investigative Subpoena(s), wherein, the prosecution bound them to said statements within notification of the penalty of perjury.

Defendant-Appellant Foster, hereby asserts that it was those intimidating coercive tactic's which spilled over and tainted the Investigative Subpoena proceedings, forcing those witness(es) to further the testimony given under pressure of the coercive atmosphere:

*****TRACY DEANNA HUGHES*****

**Line 10** Q. Okay.

And I was there and you were there and there was a Court Reporter there, and that was at the District Court in South Haven, Michigan?

**Line 14** A. Yes.

**Line 15** Q. And I believe Detective Oppenheim was there as well?

**Line 16** A. Yes.

**Line 17** Q And you were sworn under oath and you were advised of your rights and you were advised of penalties of perjury and advised of all that?

Defendant-Appellant Foster, hereby asserts that it was part and partial to these subtle threats which prejudiced him within receiving a fair and impartial trial. (**See** People-v-Love, 43 Mich.App. 608, 613; 204 N.W.2d 714(1972), wherein, the Court held that;

> "It is axiomatice that the credibility of a witness is an issue "of utmost importance" in every case."

Within this regard, the prosecution knew or should have known from previous testimony that the police engaged within 'coercive conduct' to

secure several of its (female)witneses testimony, yet rather than investigate these testimonial allegations, the prosecution egregiously sought to utlize subtle threats of charging said witnesses with perjury, whenever they attempted to recent. (See People-v-Holliday, supra, 144 Mich App App. 566-567; 376 N.W 2d 154, wherein, the Court held that;

> "It is also axiomatic that evidence of a witness' bias or interest in a case is highly relevant to his credibility." (See also People-v-Bell, 88 Mich App App 348-350; 276 N W 2d 605, and cases cited, therein.

Evident of prosecution's knowledge of the perjured testimony is the fact that the Medical Examiner's initial findings regarding the Certificate of Death for Ms. Boothby, was amended, so as to be consistent with the prosecution's theory, after statements made by Adrienne Burnette:

***MEDICAL EXAMINER UNDER COERCIVE POLICE INFLUENCE***

Line 7 Q. Okay.

You have indicated another thing that you have rely on the police to get the history, is that correct, when you conduct an autopsy?

Line 12 A. Information that I receive prior to doing an autopsy comes from detectives or other sources.

Line 15 Q. Do you ever verify this information independently, when you get it?

Line 17 A. No. (See Jury Trial Transc., Vol. XII, dated October 6, 2010, page 17, Lines 7-17.

***INFLUENCED AMENDMENT***

***CERTIFICATION OF DEATH OF DEBORAH BOOTHBY***

Line 8 Q. Doctor, in response to the death certificate being amended, that was amended after you folks reviewed Adrienne Burnette's statement, wasn't it?

Line 11 A. It was amended when?

Line 12 Q. After you reviewed that report from Adrienne Burnette? the new statement that you said you received?

Line 14 A. Dr Mallard actuallually is the one that amended it.

Defendant-Appellant Foster, hereby asserts that none-the-less, the findings were amended soon after Adrienne Burnette's testimonial statements to police, to

which was determined to be false. An issue, in which undoubtedly prejudiced the Defendant Foster from receiving a fair and impartial trial. (**See** Lindsay-v-King, 769 F.2d 1034, 1042(C.A. 5, 1985), **wherein**, the Court awarded new trial of prisoner convicted in Louisiana state court because withheld Brady evidence "carried within the potential...for the ..discrediting...the police methods employed in assembling the case";**See also** Kyles-v-Whitley, supra, 514 U.S.,@446; 115 S.Ct.,@1572-1573, wherein, the Court held that;

> "For jurors to count the sloppiness of the investigation against the probative force of the State's evidence would have been no such thing. When, for example, the probative force of evidence depends on the circumstances raise a possibility of fraud, indications of conscientious police work will enhance probative force and slovenly work will diminish it."

Within regards to the trial of Defendant-Appellant Foster, the 'meager circumstantial evidence' is simply to weak to support the conviction, particularly since much of it is and was 'conjecture camouflaged as evidence (**See** Kelly-v-Roberts , supra, 998 F.2d 802, 808-809(10Th. Cir. 1993).

Especially, when all of the witness(es) offered testimony regarding the same three people being within the altercation with Ms Boothby:

***LATISHA HOLLING***

Line 8 Q. And did you happen to recognize anyone within the crowd specifically that was fighting with Debbie?

Line 10 A. Yes.

Line 11 Q. And who was that?

Line 12 A. **Shevy, Ivory and Scottie.** (**See** Jury Trial Transc., Vol. **IX**, dated October 1, 2010, page 176, Lines 8-12.

Futhermore relevant is the fact that within Investigative Subpoena proceedings this witness made a startling revelation:

Line 17 Q. Okay.

The question was: "Well, forget what they say. I don't want to hear what they say."

And your answer was: "In my heart I don't feel like I hit her, but in the back of my mind I'm like, it is a possibility. I swear that I remember her

being in the parking lot. I don't remember exactly where. I don't.

Consistent with this testimony is the color of the paint chips found and recovered from the body of Ms. Boothby, during the autopsy:

**Line 14** Q. And specifically to Number 6, was it your testimony that two blue metallic paint chips and one red metallic paint chip were recovered from Item 6?

**Line 17** A. Correct (**See** Jury Trial Transc., Vol. VI, dated September 28, 2010, page 153, Lines 14-17.

Consistent with Latisha Holling's testimony regarding the color of her car:

**Line 6** Q. You drove.

And what type of vehicle did you have at that time?

**Line 9** A. A teal Ford Tempo.

**Line 10** Q. And teal is---what is teal?

**Line 11** A. It is a blueish--green color. (**See** Jury Trial Transc., Vol. IX, dated October 1, 2010, page 157, Lines 6-11.

***PRESUMED PREJUDICE OF MISCONDUCT***

"Under the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness to require that criminal defendant's be afforded meaningful opportunity to present a complete defense." (**See** California-v-Trombetta, supra, 467 U.S. 479, 485; 104 S.Ct. 2528; 81 L.Ed.2d 413(1984).

Be that as it may, Defendant-Appellant Foster was duly deprived of such a(n) inalienable right, where, the prosecution knowingly utilized false evidence, then, failed to correct it on the record. (**See Napue-v-Illinois, supra, 360 U.S. 264; 79 S.Ct. 1173; 3 L.Ed.2d 1217(1959)**, wherein, the Court held that;

> "The reversal of a conviction can be allowed, where the prosecution, although not soliciting false evidence, allows it to go uncorrected."

All of which, brings Defendant-Appellant Foster to his thirrd claim, and request for addition for grounds on appeal:

## ARGUMENT III

**DEFENDANT-APPELLANT FOSTER WAS DEPRIVED OF HIS FEDERAL AND STATE CIVIL LIBERTIES, WHERE APPELLATE COUNSEL REFUSED TO RAISE VIABLE**

IN THE COURT OF APPEALS FOR THE STATE OF MICHIGAN
**********************************************
Court of Appeals:#301361; Trial Ct :#10-17033-FC

**CLAIMS OF BOTH INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL, AS WELL AS, PROSECUTORIAL MISCONDUCT, AS ARTICULATED, HEREIN, TO WHICH WERE SUPPORTED BY FACTS AS OF RECORD, REQUIRING EVIDENTIARY HEARING BE GRANTED DEFENDANT-APPELLANT FOSTER, SO AS TO ASSESS APPELLATE COUNSEL'S INEFFECTIVENESS.**

**STANDARD OF REVIEW:** Douglas-v-California, supra, 372 U.S. 353; 9 L Ed 2d 811; 83 S.Ct. 814(1963)[**wherein,** the United States Supreme Court held that "[W]hen a State opts to act in a field where its discretionary elements such as the establishment of a system of appellate review as of right, although, not required to do so, it must none the less act in accord with the dictates of the Constitution, and in particular, in accord with the Due Process Clause of the Fourteenth Amendment."].

***STATUTORY AUTHORITY***

"...to have the assistance of counsel for his defense; to have an appeal as a matter of right, except as provided by law an appeal by an accused who pleads guilty or Nolo contendere shall be by leave of the Court; and as provided by law, when the trial court so orders, to have such reasonable assistance as may be necessary to perfect and prosecute an appeal." **Mich.Const., 1963, ¶ 1, § 20.**

***DISCUSSION***

The Michigan Supreme Court has issued and/or promulgated procedural guidelines for appellate counsel to adhere to, when representing criminal appellannt (s) on appeal as a matter of right, so as to guarantee said inalienable right. (**See** Michigan Supreme Court Order 1981-7 §(9) **Predicating;**

> "Counsel should assert claims of error which are supported by facts of record, which will benefit the defendant if successful, which possess arguable legal merit, and which should be recognizable by a practitioner familiar with criminal law and procedure who engage in diligent legal research." (**See also** People-v-Garcia, supra, 398 Mich. 250, 266; 247 N.W.2d 547, 553-554(1976).

This duty is further articulated within Michigan Complied Law standards. (**See** MCLA §780.12; MSA § 28.1114(102)

The rule of ineffective assistance of counsel comes from the case of People-v-Pickens, 446 Mich. 298; 521 N.W.2d 797(1994), where the Court stated to justify reversal under either Federal or State Constitutions, a Defendant must satisfy the two-prong test articulated by the United States Supreme Court in Strickland-v-Washington, 466 U.S. 668; 104 S.Ct. 2052; 80 L.Ed 2d 674(1984).

Second, that Defendant must show that the deficient performance prejudiced the Defendant such that there is an existence of reasonable probability that, but for counsel's error, the result of the proceeding would have been different.

The Michigan Supreme Court has also provided guidelines, in which, direct appellate counsel not to shy away from perfecting and/or prosecuting issue (s) that are controversial in nature:

> "Counsel should not hesitate to assert claims which may be complex, unique or controversial in nature, such as issues of first impression, challenges to the effectiveness of other defense counsel, or arguments for changes in the existing law." (**See** Michigan Supreme Court Order 1981-7 §(10).

Highly probable is the fact that the issue(s) articulated, herein, could have been and should have been raised within appointed appellate counsel's preparation of Defendant-Appellant Foster's Application for Leave to Appeal, however, counsel failed to investigate such meritorious appellate claims. (**See** Michigan Supreme Court Order 1981-7 §(7) **Predicating**:

> "Counsel shall investigate potentially meritorious claims of error not reflected in the trial court record when he or she is informed or has reason to believe that facts in support of such claims exist."

Rather than provide the Constitutionally guaranteed type of assistance, to which, Defendant-Appellant Foster is entitled, appointed appellate counsel has virtually left said appellant to 'shift on his own.' (**See** Kimmelman-v-Morrison, supra, 477 U.S. 365(1986), **wherein**, the Court **held that**;

> "A layman will ordinarily be unable to recognize counsel's error and to evaluate counsel's professional proformance [Citation Omitted]; Consequently, a criminal defendant will rarely know that he has not been represented competently until after trial or appeal, usually when he consults another lawyer about his case."

***FAILURE TO RAISE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL CLAIM***

According to facts as of record, trial counsel failed to present an adequate defense, wherein, counsel held opportunity to hear testimony regarding:

[1] **POLICE COERCIVE INTERROGATION**. Several witness(es) testified that they suffered intimidation, and rather lengthy interrogations by Michigan State Trooper Kyle Gorham, yet counsel failed to investigate these assertions.

[2] **AMENDED DEATH CERTIFICATION** Medical Examiner admitted that the certificate of death regarding the demise of Ms. Boothby had been amended, so as to fit a prosecutorial theory, which resulted from testimonial statements made to the police.

by Adrienne Burnette, in whom, admitted that she had 'lied' to investigative officer(s).

Trial counsel had a duty to investigate the aforementioned assertions, yet failed to do so, resulting in the conviction of Defendant-Appellate Foster. ( **See** Beasley-v-United States, supra, 491 F.2d 687, 696(C.A. 6, 1974), **wherein**, the Court **held that**;

> "Potentially exonerating defenses were not explored by counsel and were not developed at trial. Because Petitioner was represented by incompetant and ineffective counsel, his conviction can not stand. Harmless error test do not apply in regards in regards to deprivation of procedural right so fundamental as effective assistance of counsel." citing Glasser-v-United States, 315 U.S. 60, 76; 62 S.Ct. 457; 86 L.Ed.2d 680(1942); **Chapman-v-California**, 386 U.S. 18, 23; 87 S.Ct. 824; 17 L.Ed.2d 705(1967).

***FAILURE TO RAISE PROSECUTORIAL MISCONDUCT CLAIM/ UNETHICAL CONDUCT***

Aside from allowing the knowingly perjured testimony of a jailhouse informant, the prosecution knew or should have known of the coercive tactic's utilized by investigative officer(s). (**See** Kyles-v-Whitley, supra, 419 U.S.,@434; 115 S.Ct.,@1564-1565; 131 L.Ed.2d 490(1995), **wherein**, the Court **held that**:

> "Suppression by prosecution of evidence favorable to defendant upon request violates due process, where evidence is material either to guilt or punishment, irrespective of good faith or bad faith of the prosecution." (**See also** Constitutional Law (key) 268(5).

Be that as it may, the prosecution egregiously relied on tainted testimony, including the amendment of the Medical Examiner's findings, within a(n) overt effort to resolve an obviously cold case, irrespective of the actual innocence of Defendant-Appellant Foster. (**See** Jury Trial Transc., Vol. XI, dated October 5, 2010, page 163, Lines 13-15 **Providing**:

**Line 13 Q.** And you never saw Mr. Foster have any physical contact with Ms. Boothby at all?

**Line 15 A.** No, I didn't see him, no. (**See** People-v-Parquette, supra, 214 Mi Mich.App. 336; 543 N.W.2d 342(1995), **wherein**, the Court **held that**;

> "The proper test for prosecutorial misconduct is whether or not Defendant was denied a fair and impartial trial."

It is highly plausible, based on the evidence and testimony presented during the trial of Defendant-Appellant Foster, that Ms. Boothby was run over as

IN THE COURT OF APPEALS FOR THE STATE OF MICHIGAN
*********************************************************
Court of Appeals: #301361; Trial Ct.: #10-17033-FC

as she lay within the parking lot after being assaulted, as the crowd disbursed after it was announced that the police had been called(e.g. Ms Soothby's death could have been accidential. (See Sullivan-v-Lousiana, supra, 508 U.S. 275; 113 S.Ct. 2078; 124 L.Ed.2d 182(1993), wherein, the Court held that:

> "[P]rosecutor bears burden of proving all elements of offense charged, and must persuade fact finder beyond a reasonable doubt of facts necessary to establish each of those elements."

***APPELLATE COUNSEL INEFFECTIVENESS***

This Honorable Court has held opportunity to evaluate similiar claims regarding state appointed appellate counsel failing to act as a(n) 'active advocate' within perfecting and/or prosecuting indigent criminal appellant claims (See Duncan-v-State, 284 Mich.App. ,@254-255(2009).

Defendant-Appellant Foster, hereby prays that this Honorable Court grant the following, as amicable relief, thus, sought:

[1] REMAND. Grant remand for evidentiary hearing regarding Defendant-Appellant's claims of being represented by ineffective trial and appellate counsel, so as to gauge the assistance provided during both procedural process(es). (See People -v-Reed, supra.

[2] REVERSE. Reverse the conviction based on Defendant-Appellant's claims of prosecutorial misconduct, to which, are supported by the trial court record. (See Berger-v-United States, supra, 295 U.S. 78; 55 S.Ct. 629; 79 L.Ed. 1314(1935).

For Defendant-Appellant Foster has been duly deprived of the procedural safeguards that the Constitution provides, thus, his conviction should not be allowed to stand. (See Williams-v-Taylor, supra, 529 U.S. 362, 390-391; 120 S.Ct. 1495, 1511 ; 146 L.Ed.2d 389(2000).

RESPECTFULLY,
BY: [signature] #226862
MR. EDWARD FOSTER.,#
BELLAMY CREEK CORRECTIONAL FACILITY
1727 West Bluewater Highway(4-255-T)
IONIA, MICHIGAN 48846
In Pro Per. MOTION.

RETURNED
OCT 11 2012
COURT OF APPEALS
THIRD DISTRICT
LARRY S. ROYSTER
CHIEF CLERK

RECEIVED
2012 OCT -9 AM 10:31
COURT OF APPEALS
LANSING OFFICE
LARRY S. ROYSTER
CHIEF CLERK

RECEIVED
2012 OCT 11 AM 11:25
COURT OF APPEALS
GRAND RAPIDS OFFICE
LARRY S. ROYSTER

***VERIFICATION***

I, EDWARD FOSTER, being solemnly sworn, hereby avers to the statements made herein, being truthful to the best of my knowledge, information and beliefs

2 OCT 2012

Anna Estes

NOTARY PUBLIC
MY COMMISSION ENDS: 24 JUN 2018

DECLARANT'S SIGNATURE

ANNA ESTES
NOTARY PUBLIC, STATE OF MI
COUNTY OF IONIA
MY COMMISSION EXPIRES Jun 24, 2018
ACTING IN COUNTY OF IONIA

ANNA ESTES
NOTARY PUBLIC, STATE OF MI
COUNTY OF IONIA
MY COMMISSION EXPIRES Jun 24, 20
ACTING IN COUNTY OF

RETURNED
OCT 11 2012
COURT OF APPEALS
THIRD DISTRICT
LARRY S. ROYSTER
CHIEF CLERK

RECEIVED
2012 OCT 11 AM 11:25

Date: October 2, 2012.

C/o 1727 West Bluewater Highway(4-256-T)
Ionia, Michigan 48846
**************************************

**To**: Mr. MICHAEL L. MITTLESTAT, P-68478
STATE APPELLATE DEFENDERS OFFICE
C/o 645 Griswold Street, suite #3300
Detroit, Michigan 48226

**Re**: Request for Effective Assistance.

Date: October 16, 2012.

Dear Appointed Appellate Counsel,

ATTACHED Please find one copy of a recent Motion to Amend and/or Supplement Application for Levae to Appeal.

I was informed that I must allow you to file the claims articulated, therein , on my behalf within the Court of Appeals.

Mr. Mittlestat, as you well know, you are only appointed to represent me in the initial phase of the appellate process, thus, I would like to resolve all viable claims, now. Within doing so, it will allow the Michigan Supreme Court an opportunity to adjudicate those claims, prior to Federal review.

I, once again, claim my innocence, and would like nothing more, than to be ex-onerated of these heinous charges. Contrary to the jury's findings, Adrienne Burnette, as well as, other alleged witness(es) were intimidated by State Trooper Kyle Gorham. Notice there is a common thread that binds within their contact with said officer, in which, leads up to Investigative Subpoena testimony.

Please acknowledge receipt of this correspondence, and allow me some insight as to your disposition within presenting these claims.

I sincerely "Thank You' for your time & efforts within these regards!

#226860

CC:
SADO
COUNSEL(MITTLESTAT)
COURT OF APPEALS
Prisoner.

# STATE APPELLATE DEFENDER OFFICE

DAWN VAN HOEK
DIRECTOR

JONATHAN SACKS
DEPUTY DIRECTOR

www.sado.org
Client calls: 313.256.9822

PENOBSCOT BLDG., STE 3300
645 GRISWOLD
DETROIT, MI 48226-4281
Phone: 313.256.9833 • Fax: 313.965.0372

LANSING AREA:
Phone: 517.334.6069 • Fax: 517.334.6987

November 26, 2013

Clerk
Michigan Supreme Court
2nd Floor Law Building
525 West Ottawa
P. O. Box 30052
Lansing, MI 48909

Re: People v Edward Deon Foster
Supreme Court No. ______
Court of Appeals No. 301361
Circuit Court No. 10-17033FC

Dear Clerk:

Enclosed for filing are an original and seven (7) copies of the following: Notice of Hearing/Certificate of Service and Motion to Expand Grounds for Review and to Accept Pro Per Supplemental Application for Leave to Appeal for filing.

Sincerely,

Michael L. Mittlestat
Assistant Defender

MLM/
Enclosures

cc: Van Buren County Prosecutor
Attorney General
Court of Appeals Clerk (Grand Rapids) (Proof & Notice only)*
Van Buren County Circuit Court Clerk (Proof & Notice only)*
Edward Deon Foster

STATE OF MICHIGAN

IN THE SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN

Plaintiff-Appellee

-vs-

EDWARD DEON FOSTER

Defendant-Appellant.

Supreme Court No.

Court of Appeals No. 301361

Circuit Court No. 10-17033FC

______________________________/

MOTION TO EXPAND GROUNDS FOR REVIEW AND TO ACCEPT PRO PER SUPPLEMENTAL APPLICATION FOR LEAVE TO APPEAL

Defendant EDWARD DEON FOSTER, by his attorney, the STATE APPELLATE DEFENDER OFFICE, by MICHAEL L. MITTLESTAT, asks this Honorable Court to grant his Motion To Expand Grounds For Review and to Accept Pro Per Supplemental Brief in Support of Application for Leave to Appeal, stating:

1. Defendant-Appellant was convicted of murder-first degree-felony and sentenced to life in prison without parole following a jury trial in Van Buren County Circuit Court.

2. Defendant-Appellant appealed by right and, through undersigned counsel, raised numerous challenges to his convictions.

3. In an opinion issues on August 8, 2013, the Court of Appeals rejected the claims made by undersigned counsel and affirmed Defendant-Appellant's convictions.

4. Counsel's timely-filed motion for reconsideration was denied by the Court of Appeals on October 3, 2013.

5. The application for leave to appeal is due in this Court on December 2, 2013, since the 56-day deadline falls on a court holiday.

6. Undersigned counsel is filing the leave application contemporaneously with this this motion to address the issues rejected by the Court of Appeals.

7. Defendant-Appellant respectfully requests, pursuant to MCR 7.316(A)(1), (3), & 7, and MCR316(B), to expand the grounds for review beyond that addressed previously to consider additional issues. Furthermore, Defendant-Appellant requests this Court accept for filing and consider the contemporaneously-submitted pro per supplemental brief in support of review. In support of these requests, undersigned counsel submits that:

8. The Brief on Appeal was filed by the undersigned on February 2, 2012. This due date was established by an extraordinary extension of time granted by the court as well as leave to exceed the 50-page brief limit due to the thousands of pages of transcripts and extraordinary number of appellate issues raised in this case.

9. A copy of the Brief on Appeal was sent to Defendant-Appellant with an explanation of his rights and the deadlines for filing a pro per supplemental brief under Administrative Order 2004-6, Standard 4.

10. Subsequently, the extraordinarily-large circuit court record was sent to Defendant-Appellant, who is in prison, so that he could review the record and prepare his pro per supplemental brief on appeal.

11. Defendant-Appellant sent to the undersigned's office a copy of his pro per supplemental brief so that it could be filed in the Court of Appeals in accordance with Administrative Order 2004-6, Standard 4

12. Due to a clerical error, an oversight, and a mix-up at SADO for which Defendant-Appellant bears no responsibility, the pro per supplemental brief was not filed in the Court of Appeals in time for the Court of Appeals to consider it.

13. After the Court of Appeals denied reconsideration, it was discovered and brought to undersigned's attention that Defendant-Appellant's Pro Per Supplemental Brief had been misplaced and overlooked, and never filed.

14. The failure to timely file Defendant-Appellant's Pro Per Supplemental Brief is not by any means due to the fault or negligence of Defendant-Appellant, a non-lawyer who is incarcerated in prison. Rather, the failure to file this pleading is the undersigned's ultimate responsibility and a mistaken non-compliance with Administrative Order 2004-6, Standard 4

15. In light of this, the interests of justice as well as the letter and spirit of MCR 7.316(A)(1), (3), & (7) and MCR 7.316(B), call for this Court to issue and order: a) expanding the grounds for review in considering whether to grant leave to appeal, to cover the issues and arguments made in the pro per pleadings in addition to the grounds raised in counsel's application for leave to appeal, and; b) accept for filing and consideration the contemporaneously-filed pro per supplemental brief in support of leave to appeal.

**WHEREFORE**, Defendant-Appellant respectfully requests that this Honorable Court grant leave to appeal or, in the alternative, remand for resentencing.

Respectfully submitted,

STATE APPELLATE DEFENDER OFFICE

BY: ______________________________

MICHAEL L. MITTLESTAT (P68478)
**Assistant Defender**
State Appellate Defender Office
Suite 3300 Penobscot
645 Griswold Street
Detroit, MI 48226
(313) 256-9833

Date: November 26, 2013

STATE OF MICHIGAN

IN THE COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,
Plaintiff-Appellee,

-vs-

EDWARD DEON FOSTER,
Defendant-Appellant.
_______________________________/

Court of Appeals No. 301361

Circuit Court No. 10-17033FC

**OFFER OF PROOF**

**MICHAEL L. MITTLESTAT (P68478)** hereby makes the following offer of proof:

1) I am the appellate attorney with the State Appellate Defender Office assigned to represent Appellant in the above-captioned case.

2) I am concurrently-filing Defendant-Appellant's Brief on Appeal in this case, which argues, *inter alia* that prosecution witness Keith Nickerson presented false and/or perjured testimony at trial, thereby violating Defendant-Appellant's due process rights.

3) I am moving on Appellant's behalf to supplement the record on appeal pursuant to MCR 7.216(a)(4), to include the sentencing transcripts from April 19, 2010, as well as the Government's Motion for a Downward Departure, filed on April 7, 2010, in Mr. Nickerson's federal armed robbery case, *United States v Keith Nickerson,* U.S. District Court, W.D. MI, No. 1:09-CR311.

4) In preparing for this case, I obtained the above-described documents, attached to this motion as Appendix A and Appendix B, through the official PACER website for the United States District Court for the Western District of Michigan, found at https://ecf.miwd.uscourts.gov/cgi-bin/DktRpt.pl?963379535116412-L_452_0-1.

5) The attached transcripts are necessary for this Court to decide and rule on Defendant-Appellant's Due Process claim.

6) If this Court denies the motion to supplement the appellate record under MCR 7.216(A)(4), I am alternatively moving to remand under MCR 7.211(C)(1) to the trial court. If a remand is granted, I intend to introduce the Appendix A and B so that they are made part of the record, and to rely on those materials to litigate the due process claim in this Court or the trial court if necessary.

7) The within motion to remand is brought in good faith.

STATE APPELLATE DEFENDER OFFICE

BY: /s/ Michael L. Mittlestat

MICHAEL L. MITTLESTAT (P68478)
Assistant Defender

Date: February 2, 2012

Ed D. Foster #226862 (B-1-34)
Kinross Cor. Facility (KCF)
4533 W. Industrial Park drive
Kincheloe, Mi 49788-0001

no Postmark - DP
8/2/17

U.S. District Court
Eastern District
231 W. Lafayette Blvd.
Detroit, Mi 48226

RECEIVED
AUG - 2 2017
CLERK'OFFICE
DETROIT